MICHIGAN LUMBER YARD v. SLATER.

CANCELLATION OF INSTRUMENTS—DEEDS—MORTGAGES—GOOD FAITH —NOTICE.

On appeal from a decree canceling a deed and mortgage, given to the manager and one of the owners of a contractors' supply company, by a contractor who owed the company for material for several jobs, and who held title to the premises merely for the purpose of enabling him to build a house thereon for the owners, where the evidence shows that the facts were known to defendants and the transaction was not in good faith, the decree of the court below will be affirmed.

Appeal from Wayne; Codd, J.   Submitted January 28, 1919.   (Docket No. 59.)   Decided April 3, 1919.

Bill by the Michigan Lumber Yard against Olney A. Slater, Henry C. Fuller and others to foreclose a mechanic's lien.   Defendant Slater filed a cross-bill to foreclose a mortgage.   Defendant Fuller and others filed a cross-bill to set aside certain deeds.   From the decree rendered, defendant Slater appeals.   Affirmed.

*W. W. Wicker,* for appellant.

*Berger & Milburn,* for appellees.

MOORE, J.   This bill of complaint is filed to foreclose a mechanic's lien in the sum of $790.43 for lumber and materials furnished Walter J. Miller by the plaintiff.   The defendants and appellees, Henry C. Fuller, Nellie Belle Fuller, his wife, and George W. Ross, filed separate cross-bills seeking to have two certain warranty deeds, one from the Fullers to Walter J. Miller, dated June 2, 1915, and one from Walter J. Miller and wife to Wesley J. Peoples, dated September 15, 1915, set aside and cancelled, and for a reconveyance of the property in question to the appellee, George W. Ross, and for the cancellation and discharge of a certain mortgage upon the same property held by the cross-plaintiff and appellant, Olney A. Slater.   The cross-plaintiff and appellant, Olney A. Slater, filed his cross-bill for the foreclosure of the mortgage.   The defendants and appellees, Albert P. Collard, Gregg Hardware Company, and Omer A. DeSmet, filed their cross-bills to foreclose certain mechanics' liens upon the same property, claimed by them in the sums of $125, $12.30 and $190 respectively.   The default of defendant Wesley J. Peoples was entered for want of an answer after appearance, and that of defendant Walter J. Miller for want of an

appearance after personal service of process. After a hearing taken in open court a decree was entered allowing the liens of the lien claimants in the sums mentioned above with interest and ordering a reconveyance from the defendants Walter J. Miller and Wesley J. Peoples, as prayed for in the cross-bills, and declaring the mortgage held by appellant Olney A. Slater to be invalid and a cloud upon the title of the appellees Fuller and Ross, and ordering a discharge of the mortgage. From this decree the defendant Olney A. Slater has appealed, and the only question in dispute before this court is the validity of his mortgage.

After the hearing the trial judge expressed himself as follows:

"I am satisfied that the mortgage given by Peoples to Slater is not valid. The deed from Miller to Peoples was simply an attempt by Miller to secure the Supply Company for all his indebtedness to it with property which he only owned for a specific purpose, obviously known to Peoples, that of building a house upon it for the defendants Fuller. No doubt some material for this building was furnished by the Supply Company, but it also appears that they were furnishing him, and he was owing for, other material for other buildings, all included in the amount claimed on this mortgage. No attempt to separate them or to enlighten this court as to any specific amount due to the company, of which Slater is owner, has, or under the testimony could be made. This uncertainty coupled with the palpable intent to get this security for other than the purpose of securing themselves for the material they may have put therein, is such a fraud, constructive at least, as against the defendant Fuller, as to render the mortgage void. The mortgage should, therefore, be cancelled, and defendants Miller and Peoples ordered to convey the property to defendant Ross who by this decree is to pay all lienors and enter into contract with the Fullers per his agreement."

Elaborate briefs are filed in which many legal prin-

ciples are discussed and many authorities cited. In our view of the case the facts relating to the giving of the deed by Mr. Miller to Mr. Peoples and the giving of the mortgage by Mr. Peoples to Mr. Slater are convincing that both of these papers were given with full knowledge of the facts and show the mortgage was not a good faith mortgage, and for value.

Mr. Peoples' testimony discloses that he was the manager of the Contractors Supply Company, which company was owned by the Slater Construction Company, of which company Olney Slater was the manager. Mr. Olney Slater's testimony shows that he and his two brothers were the owners of the Contractors Supply Company, and they were also owners of the Slater Construction Company. While the deed from Mr. Miller was made to Mr. Peoples it does not appear that he paid anything for it and that he knew Mr. Miller had absconded and was in financial straits. While the mortgage recites that it was given for $2,500, the only money invested in it by Mr. Slater was by the giving of a check for $1,500 to Mr. Peoples, who had the amount thereof placed to his credit, and he at once paid the Contractors Supply Company $1,250, and a few days later returned $250 to Mr. Slater. Mr. Peoples' testimony as to the application of the $1,250 is not consistent with itself. He was called as an adverse witness and his testimony was hazy and very unsatisfactory, though it does establish the fact that he told Mr. Slater all he knew about the transaction before the mortgage was given. The testimony discloses that Mr. Miller had bought material for several jobs which he had under way and for which he was indebted.

In Mr. Slater's testimony the following appears:

"*Q*. Mr. Peoples was not doing anything else but managing your Contractors Supply Company?

204—Mich.—43.

"*A.* He seemed to be doing some work for Miller.

"*Q.* When did you find that out, before or after?

"*A.* Before or after what?

"*Q.* Before discontinuing the Contractors Supply Company business or after?

"*A.* Before.

"*Q.* You found out that he was doing work for Miller?

"*A.* Yes.

"*Q.* How did you come to find it out?

"*A.* I don't know. I did not know the extent of his business with Miller at that time. Didn't look to see how much credit they had. I presume I knew at the time how much credit was extended by the Contractors Supply Company to Miller. I don't know how much. I looked to see how much credit it had extended about 150 customers. I don't remember Miller from the others I cannot tell whether I looked to see how much money the Contractors Supply Company had loaned Miller. I know now it had loaned and extended credit to Miller, about $1,200 on all jobs; that is my understanding."

The examination of Mr. Peoples and Mr. Slater is long. It would not be profitable to recite more of it. They were invited to bring in their books showing their transactions with Mr. Miller; they did not do so. Their testimony is convincing to us that the trial judge was right in his conclusions.

The decree is affirmed, with costs against appellant Slater.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.